## CROMWELL *vs.* SELDEN and others.

Under a reservation in a grant of lands and water privileges, of sufficient water to propel certain specified machinery, the grantor is entitled to the use of the water for any purpose not requiring a greater power than is reserved.

Thus, where the owner of lands upon a mill stream granted a portion thereof, together with water sufficient to operate a saw mill at all times, *when there should be more than enough to drive a grist mill with three run of stone, and certain other specified machinery;* HELD, that the grantor in the deed and those holding under him were not restricted in the use of the water to the particular objects mentioned in the deed, but might use the quantity reserved for any other purpose.

CROMWELL brought an action on the case in the supreme court against Selden and others, for diverting from the plain-

tiff's grist mill, &c. the waters of Fish creek, in Oswego county. The cause was heard before referees, and on the hearing, the case, so far as necessary to be stated, was as follows: On and before the 20th of May, 1834, one Solomon Rathbone owned the premises and water privileges on Fish creek, occupied and claimed by the plaintiff and defendants respectively at the commencement of the suit; and on that day he conveyed to one Marvin certain premises "together with the saw mill standing thereon, and the privilege of bringing the water from the dam to said mill and water sufficient to keep a saw mill in operation at all times, *when there is more than is wanted to drive a grist mill with three run of stone, and one set of carding machines, and picker, and fulling mill, and other machinery for dressing cloth.*"—"It is understood that the above named water may be put to any use that will not in any wise interfere with the grist mill, carding machines and fulling mill; said saw mill privilege to be at one-third of the expense of the repairs that may be necessary to be done on the dam or in rebuilding." The defendants held under this deed. On the 7th of September, 1835, said Rathbone conveyed to the plaintiff certain premises together with the grist mill and clothing works situated thereon, being the same grist mill, &c. mentioned in the deed to Marvin. After the plaintiff became owner under this conveyance, he applied a portion of the water to propel *a spinning machine, looms, and other machinery for the manufacture of cloth;* and the question was, whether such use of the water was justified by the deed from Rathbone to Marvin. On the part of the defendants it was contended that the plaintiff was entitled to use the water reserved only for the purpose of propelling the grist mill, and other establishments specified in that deed. The plaintiff, on the other hand, insisted that he was entitled to use the water for any purpose, provided he did not draw more than the specified quantity. The referees determined the question in favor of the plaintiff, and reported against the defendants. The supreme court sitting in the fifth district refused to set aside the report, and after judgment the defendants appealed to this court.

Cromwell *v.* Selden.

*S. Beardsley,* for appellants.

*B. D. Noxon,* for respondent.

HARRIS, J. Rathbone, at the time of his conveyance to Marvin, was the owner of the entire water power in question. He was entitled to its unrestricted use. The plaintiff, as his grantee, has succeeded to all his rights, except such as he had granted to Marvin, and those are vested in the defendants. The single question now presented, relates to the extent of the rights of the parties respectively, to the use of the water, and this depends upon the construction to be given to the terms found in the grant from Rathbone to Marvin. The defendants are entitled to "water sufficient to keep a saw mill in operation at all times when there is more than is wanted to drive a grist mill with three run of stone, and one set of carding machines, and picker, and fulling mill, and other machinery for dressing cloth." The grantor reserved to himself the first use of the water to the extent required to drive a grist mill, &c. The grantee only acquired a right to use a limited quantity of water, and that only when it was not wanted for the prior use reserved. Was that prior use to be limited to the particular kinds of machinery specified in the reservation, or were the terms employed as a mode of determining the quantity of water the prior use of which the grantor reserved to himself? In other words, was it intended that the grantor should be restricted, in the use of the water, to the machinery to which it was then applied, or might he, at his pleasure, apply the same quantity of water to any other machinery?

It is a general rule of construction, applicable to grants of water powers, that when the question arises whether, by a grant of a sufficient quantity of water to propel a particular kind of machinery, the terms employed are used merely to indicate the quantity of water intended to be granted, or to restrict the use of the water to the machinery specified, the former construction is to be favored, when the language of the grant will admit of such construction. The grounds upon which this rule rests are

twofold. First, it is more beneficial to the grantee, without being more onerous to the grantor, that he should be permitted to apply the water granted to any machinery he pleases, not requiring a greater amount of power than that specified in the grant. Secondly, it is supported by public policy. The interests of the community will generally be best promoted, by allowing an unrestricted application of the power to such machinery as will be most profitable ‚to the owner. (*Ashley* v. *Pease*, 18 *Pick.* 268.)

There is another rule of construction equally well settled, of which the defendants claim the benefit. It is, that in every grant, it being the act of the grantor, all doubtful expressions are to be taken in a sense most favorable to the grantee. Where terms are employed which, unexplained, are susceptible of two constructions, if the intent of the parties is not otherwise apparent, that construction is to be adopted, which will operate most to the advantage of the grantee.

In this case I think the most that can be said in favor of the construction for which the defendants contend is, that the terms of the reservation will bear that construction. They certainly do not demand it. That we may the better determine what the parties intended by the reservation in the grant, let it be supposed that Rathbone, the original owner of the whole power, had first conveyed to the plaintiff " *so much water as is sufficient to drive a grist mill with three run of stone, and one set of carding machines and picker and fulling mill, and other machinery for dressing cloth ;*" and then had conveyed to the defendants " *water sufficient to keep a saw mill in operation at all times when there is more than is wanted to drive a grist mill,*" &c. Would any one doubt that in each case the parties intended to determine the quantity of *power* to which the grantee should be entitled, without reference to the use which should be made of it ? Rathbone was willing to dispose of a certain portion of the water power of which he was the owner. In doing so, however, he would not deprive himself of the quantity which he himself desired to use. How should this be done ? How should the quantity of power to be granted, and the quantity

to be reserved be defined? There was perhaps no other way, at any rate none so practicable, as to say that the power reserved should be sufficient to drive certain well known machinery, and that the power granted should be sufficient to propel other machinery equally well known. By such a standard the quantity intended to be reserved, and the quantity intended to be granted, could be most easily ascertained. There is nothing in the terms of the grant itself, or in the situation of the parties, so far as it appears, from which it can be inferred that either party to the grant desired to restrict the other in the mode of using the amount of power to which he would be entitled. Much less is there any thing to show that the grantor himself, in reserving the prior use of a certain portion of the power, intended to limit himself in the exercise of the right he before enjoyed, of applying that power in such manner as he might deem most to his advantage.

The construction thus proposed to be given to the grant in question, is supported by all the adjudged cases with which I have met. *Bigelow* v. *Battel*, (15 *Mass.* 313,) is not distinguishable in principle from this case. There the plaintiffs being the owners of the entire water power of the Charles river, at Natick, granted to the defendants the privilege of taking from their dam a specified quantity of water, " *except when the quantity of water is so small as not to be sufficient to carry the plaintiffs' grist mill and a cotton factory which may be erected, with not more than* 5000 *spindles.*" Instead of erecting a cotton factory, the plaintiffs built a paper mill. The action was brought for taking more water from the dam than by their lease the defendants had a right to take. For the defense it was insisted, that the water power reserved for the plaintiffs was for the use of a cotton mill containing 5000 spindles. Until such a mill should be erected, the reservation was not to take effect. Being an exception in a grant, it should be taken most strongly against the grantor. It was no part of the contract, that the plaintiffs should have a right to the water for the use of a paper mill. But it was held, that the right reserved did not limit the use of the water to a cotton factory; that the true intent of the reser-

vation was that water should, at all times, be left sufficient to carry 5000 spindles. "It can not be imagined," say the court, "that the plaintiffs would limit and restrict the use of their own privilege, nor could it be of any importance to the defendants, when the contract was made, to what use that part of the water should be applied to which they had no claim."

In *Johnson* v. *Rand*, (6 *N. Hamp.* 22,) the grantor had reserved to himself "the exclusive right to a corn mill, with two sets of stones, and to draw water sufficient to supply the same, in preference of any and all other machinery whatever." It was held, that he might change the mode of using the water, provided he took no more water than was necessary to work the mill. (*See also Bullen* v. *Runnels*, 2 *N. Hamp.* 255.)

In *Luttrell's case*, (4 *Coke*, 86,) the plaintiff alledged that he was seized in fee of *two old and ruinous fulling mills*, to which from time immemorial, *magna pars aquæ cujusdam rivuli* ran from a place called Head Wear, that afterwards he had pulled down the fulling mills and erected two mills to grind corn, and he complained that the defendant had diverted the water from these mills. The plaintiff had judgment, and it was assigned for error, that by breaking and abating the old fulling mills, and building new mills, of another nature, the plaintiff had destroyed the prescription and could not prescribe to have any water course to grist mills. If a man grant me a water course to my fulling mills, I can not, it was said, convert them to corn mills, *nec e contra*. For prescription in such case shall be intended to commence by grant, and it might be more beneficial to him who made the original grant, and to others who had his estate, to have them fulling mills rather than corn mills. Perhaps they have corn mills so near that the building of corn mills would be prejudicial to them, and it would be against reason to extend a grant or prescription to have a water course to fulling mills to corn mills, which is not within the purport or intention of the grant or prescription. But it was resolved that the prescription did extend to the new grist mills; that the plaintiff might alter the mill into what nature of a mill he pleased, pro-

vided always that no prejudice should thereby arise by diverting or stopping the water, as it was before.

Upon the argument the defendants' counsel relied upon *Ashley* v. *Pease*, (18 *Pick.* 268,) and *Strong* v. *Benedict*, (5 *Conn.* 210,) as favoring the construction for which they contend. It is true that in both these cases it was held that the grantee was not only limited in the quantity of water which he had a right to use, but also in the manner of using it. But each of these cases is clearly distinguishable from that under consideration. In *Ashley* v. *Pease*, the plaintiff being the owner of an entire water privilege, granted and conveyed to the defendants' ancestor a fulling mill, and covenanted with him that when there should be a sufficiency of water to carry and supply the uses of all the mills then standing, or which might thereafter be standing in their place, on the dam, he would suffer and permit him to draw from the floom " *so much water as might be necessary to carry and supply the fulling mill then standing or which might thereafter stand upon the lot he had granted,*" but when there was not a sufficiency of water for the purposes and uses aforesaid, then he was to draw water for the use of the said fulling mill or mills, twelve hours successively, in the twenty-four, and no more. The grantee also covenanted, in the same instrument, that he would never use or occupy the fulling mill, nor any other mill or building which might thereafter stand in the same place, so as to interfere with or obstruct the going or working of the plaintiff's saw mill, or any other mill or building which the plaintiff might erect in the same place. The defendant erected a carding machine in the same building occupied as a fulling mill, and used the water for the purpose of running both, but not both at the same time. The court held that it was manifest from the general tenor of the contract, that it was the intention of the parties that the grant should be limited to the use of the water for driving the fulling mill, and that the use of it for a carding machine was unauthorized. That this is what the parties intended, the court say, is confirmed by the grantee's covenant not to obstruct or interfere with the plaintiff's mills, by using and diminishing the

water power, except by drawing water to carry and supply the fulling mill.

In *Strong* v. *Benedict,* the grant was of four acres of land, " with the privilege of building a mill for the purpose of fulling cloth, together with the privilege of drawing so much water as should be necessary to carry or drive a good well built overshot fulling mill, at any time when the grantee *shall have occasion to use the said fulling mill.*" The grantee was to have so much water as was necessary *when he should have occasion to run the fulling mill.* " It would seem, therefore," say the court, " as if there was a limitation of the use as well as of the quantity. But without expressing a definitive opinion on this subject, it is clear, from the condition and situation of the parties and other collateral facts known to them at the time, and which may properly be recurred to for the purpose of ascertaining their mutual intentions, that it was intended that the *use* of the water as well as the *quantity* should be restricted." Thus, it will be seen, that in the first of these cases the covenant of the grantee himself amounted to an express prohibition of the use of the water for any other purpose than that specified in the grant; and in the other, although by the terms of the grant the defendant was only entitled to the use of the water " *when he had occasion to use the fulling mill,*" the court refrain from expressing " a definitive opinion" upon the construction of the terms of the grant, but place their decision upon collateral facts known to the parties at the time, clearly indicating that it was their mutual intention that the water granted should be used for a particular object only.

I think, therefore, that the referees gave the proper construction to the reservation in the deed, and that the judgment of the supreme court should be affirmed.

Judgment affirmed.