ERNEST L. CAFLISCH, Plaintiff, *v.* CLYMER POWER CORPORATION, Defendant.

Supreme Court, Chautauqua County, June 22, 1925.

**Waters and watercourses — action to restrain defendant from lowering water in artificial pond below certain level and also from raising water so as to flood plaintiff's land — pond was created by dam erected more than fifty years ago — defendant owns dam and water rights — plaintiff purchased property bordering pond and is conducting steam saw mill — plaintiff has no riparian rights in pond — defendant may lower water at will — evidence does not show any raising of water through act of defendant — evidence does not show flooding in excess of that of prior years.**

The plaintiff has no cause of action to restrain the defendant from lowering the water in a pond on the shores of which the plaintiff has a steam saw mill, since it appears that the pond in question was created more than fifty years ago by the predecessors in title of the defendant, by the erection of a dam across a creek, and that the defendant acquired all the rights that its predecessors in title had to use the dam and the power created by the water flowing from the pond.

The plaintiff has no riparian rights in the pond in question, since it is an artificial body of water in reference to which riparian rights do not exist, and, therefore, the defendant has the right to lower the level of the pond at will or to destroy the pond if it sees fit, without rendering itself liable to the plaintiff.

The plaintiff has no prescriptive right to have the water in the pond maintained at a certain level so as to float logs to his saw mill and whatever right he has is subordinate to that of the defendant.

The evidence on the question of flooding plaintiff's land establishes that the defendant has committed no act by which the level of the water in the pond is raised during flood waters, and furthermore, the evidence does not establish that the water in the pond reaches a higher level at the present time during flood water than it did in years back.

ACTION to restrain defendant from lowering level of certain lake and from causing it to be raised so as to overflow plaintiff's land.

*Freeman L. Morris* [*Thomas P. Hefferman* of counsel], for the plaintiff.

*Arthur B. Ottoway,* for the defendant.

CHARLES B. WHEELER, Official Referee:

This action is brought to restrain the defendant from lowering the level of a certain lake or pond known as Jaquins pond below a certain point, and also from causing it to be raised higher than a certain level so as to overflow the plaintiff's land, and for alleged damages incident to overflowing such lands. The claim of the plaintiff in these matters will more fully appear as we state certain of the salient facts in this case. More than fifty years ago the defendant's predecessors in title owned lands on each side of what

is known as Brokenstraw creek in the town of Clymer, Chautauqua county. This creek drained an area of something more than twenty square miles.

Something over fifty years ago the owners of this land built a dam across this creek or stream for the purpose of creating a reservoir for the storage of water to be used in the operation of two mills built below the dam. The mill nearest the dam was a grist mill, that a short distance below the grist mill was a saw mill. By the building of the dam an artificial lake or pond was created. This lake is from two to two and a half miles in length, and of varying width perhaps a quarter of a mile across in its widest part.

The plaintiff in 1907 acquired property on the banks of this lake above the dam. On this property he built a saw mill. This saw mill is operated by steam power. To get logs into the mill to be sawed the plaintiff caused them to be floated down the pond or thrown into the waters near the lake or pond. He then floated them to a sluiceway. Running down from the mill into the water was constructed a conveyor and by means of this conveyor logs were hauled into the mill above.

The defendant acquired the property on each side of the dam, and the mills below in 1917. After this acquisition it converted the grist mill into a power plant for generating electricity to supply light and power to the inhabitants of the village of Clymer and the surrounding territory. It is claimed, and the evidence tends to substantiate the claim, that in the operation of the plant for generating electricity more water is consumed than was formerly required for the grist and saw mills, due principally to the fact that the power plant runs more hours per day than was needed in running the grist or saw mill.

As a consequence of the use of more water in certain dry seasons of the year the water in the lake or reservoir is drawn off faster than in former years, and this in turn prevents the plaintiff from floating logs to the sluice and conveyor running into the mill and arrests the operations of the saw mill at certain times.

As a further cause of action the plaintiff claims the defendant has raised the height of the dam, and so narrowed the spillway that in times of flood it raises the lake or pond above its normal level, and thus overflows lands owned and used by him as a lumber yard, and that he has suffered damage thereby.

The plaintiff contends that by virtue of his rights as a riparian owner the defendant by the use of water in the reservoir has no right to draw it down so that logs cannot be floated to the conveyor of the mill, and that such water should be kept at its former normal level for his benefit.

This feature of the case the referee will first consider. If the lake or pond were a natural lake there can be little question but that the plaintiff's claim would be sound in law.

We need only cite the case of *Smith* v. *City of Rochester* (92 N. Y. 463) in support of that general proposition.

Instead, however, of this body of water being a natural lake it is purely an artificial body of water made by the parties predecessor in title. It was created expressly to provide a reservoir of water to be drawn on as emergency might require to operate the mills below the dam. That apparently was its only purpose. It was designed so that when the natural stream in dry seasons ran low, there would be a supply in reserve so the mills could continue to operate. The plaintiff understood this as well as the owner of the mills below. The dam was not constructed for the benefit of the plaintiff, or to supply him with the means of elevating logs into his saw mill built long after the dam was constructed. By purchasing land on the margin of this artificial body of water the plaintiff acquired no right as a riparian owner of uplands. Riparian rights attach to natural streams and permanent and natural bodies of water as distinguished from purely artificial ones. The natural body was the stream or creek known as Brokenstraw creek. The dam and the land on each side thereof are the property of the defendant. The defendant is under no legal obligation to maintain the dam at all. Suppose it saw fit to demolish the dam entirely and restore Brokenstraw creek to its original condition. We know of no law which would prevent the defendant taking the dam down. By so doing the stream would then flow as it originally ran more than forty years ago. The artificial lake would entirely disappear. If the defendant may remove the dam how can the plaintiff complain even though in the use of the waters of the reservoir it should lower somewhat the level of the waters as they stood in previous years.

All the cases cited by the plaintiff's counsel to maintain his contention are cases relating to rights in natural streams or bodies of water as distinguished from one created by the hand of man. We, therefore, reach the conclusion that the plaintiff must fail on this branch of the case, and the defendant has the clear and undoubted right to draw from the lake any water it needs or desires in the operation of its power plant, even though such use draws every drop of water from the lake. In such a case the natural or ordinary flow of Brokenstraw creek is in no way impaired or interfered with. The defendant and its predecessors in title by the maintenance of the dam and reservoir for upwards of fifty years (probably for nearly a hundred years) have acquired a pre-

scriptive right to maintain the same and to the use of the waters so stored. (*Ely* v. *State of New York*, 199 N. Y. 213; *Carlisle* v. *Cooper*, 21 N. J. Eq. 576; *Potter* v. *Sumner*, 75 App. Div. 186.)

The water from the pond was conducted to the defendant's mill below by means of a sluice. This sluice has never in any way been lowered, but maintained at the same height so that the water in the pond cannot be drawn lower than it has been drawn all these years as occasion demanded. All that can be claimed is that when the defendant operates the plant for power purposes it lowers the water level faster than was done when the mill was used for grinding grain.

The plaintiff has no prescriptive right to have the water in the pond maintained at a certain height so as to float logs. Whatever right the plaintiff has is subordinate to that of the defendant.

We, therefore, reach the conclusion that defendant violates no rights of the plaintiff in the use of the waters of the pond even though by such use the water in the pond is lowered so that at times logs cannot be floated into the slip at the foot of his elevator for hauling logs into his saw mill.

The question, however, further remains whether the defendant has in the operation of the dam at times raised the level of the pond so as to overflow the plaintiff's lumber yard.

The evidence on this branch of the case is more or less conflicting and such that perhaps different conclusions may be drawn. However, on the whole evidence given on the trial the referee is of the opinion that the weight of evidence is against the plaintiff's contention on this branch of the case.

The height of the dam has in no way been raised. It remains the same as originally constructed. The spillway has in no way been narrowed. Prior to the defendant acquiring the dam and mill below the prior owners had used splashboards on the top of the spillway which when the pond was full raised the water to within three inches below a certain I beam which ran across the dam. In times of floods these splashboards would be removed to aid the escape of flood waters over the spillway. Since the acquisition of the property the defendant has installed gates over the spillway which may be raised and lowered for the same purpose. The referee is of the opinion the device of gates facilitates rather than in any way retards the escape of flood waters, so that there has been no change in the construction that lessens the escape of flood waters. Of course at times of heavy and continued rains owing to the territory drained by Brokenstraw creek the level of the pond will be raised by the inflow of water from the streams which empty into it. Some of the land along the margin of the

pond is low, and has been described as swampy land. Such is at least a part of the land comprising the lumber yard of the plaintiff on the opposite side of the pond from his mill, and to a certain extent in times of flood water overflows a part of the yard. I am satisfied, however, this is not due to any damming of the waters back by any change in the dam below, but is the natural result of flood conditions, dependent largely on the amount of rainfall at a given time. Many witnesses were called by the defendant who testified that the water in the pond in later years at flood times has been no higher than in years back. The preponderance of the evidence is to that effect.

The plaintiff can hardly complain of the raising of the level of the pond. The evidence shows that just that is what he requested the defendant to do, by raising the dam. This request was so that there might be a greater depth of water so as to enable logs to be floated to the plaintiff's log elevator. The defendant refused to comply with the plaintiff's request as it might involve it in law suits with owners of property fronting on the pond. The plaintiff went so far as to even offer to supply the means of buying some property on the pond which would be affected by raising the dam.

Anyway, the defendant for the reasons stated refused to raise the dam, and it was not done.

We reach the conclusion on the whole case the plaintiff's complaint should be dismissed, with costs.

So ordered.