CHAUTAUQUA COUNTY FEDERATION OF SPORTSMENS CLUB, INC., Respondent, *v.* ERNEST W. CAFLISCH, as Administrator of the Estate of J. CARD CAFLISCH, Deceased, et al., Appellants.

ERNEST W. CAFLISCH, as Administrator of the Estate of J. CARL CAFLISCH, Deceased, et al., Appellants, *v.* CHAUTAUQUA COUNTY FEDERATION OF SPORTSMENS CLUB, INC., Respondent.

Fourth Department, January 4, 1962.

*George P. Rogers* and *Lee Towne Adams* for appellants.

*Leet & Tinkham* (*Ernest D. Leet* of counsel), for respondent.

Bastow, J. These two actions were tried together. In the first, Chautauqua County Federation of Sportsmens Club, Inc. (hereinafter " Federation "), has obtained affirmative relief restraining defendants from trespassing on certain described lands and depositing logs and other waste materials in a body of water known as Jaquins Pond. Plaintiff also has been awarded money damages for the past commission of acts so restrained. In addition the judgment decrees that Federation has acquired an easement by grant or prescription to maintain a dam to control the waters of the pond and thereby to flood certain lands owned by defendants. The latter were the plaintiffs in the second action and therein sought a decree restraining Federation from flooding their lands by the maintenance of the dam. Requested monetary relief for alleged damage was withdrawn during the trial. The complaint in this action was dismissed following trial.

We go directly to that portion of the decision of the Official Referee that, in our opinion, compels a reversal of the judgments. That is the conclusion, as incorporated in the judgment, that Federation " has the right, by grant and by prescription, to raise and maintain the waters of Jaquins Pond for any lawful purpose or use, including conservation purposes, to a normal level " which level is specifically described in the decree.

Jaquins Pond is situate in the southwest corner of Chautauqua County near the Pennsylvania border. A dam impounded the waters of the pond for over 100 years and until 1947 when it was partially destroyed by a flood. In 1959 Federation constructed a new dam which the Caflisch family now seeks to have razed. Pertinent here, because certain of the findings therein are incorporated by reference in the present judgments, is a prior litigation in 1925 when Ernest Caflisch, the father of two of the defendants in the first action herein, sought unsuccessfully to have the water level of the dam maintained at a stated level. (*Caflisch* v. *Clymer Power Corp.*, 125 Misc. 243.) Therein it was found that the pond was an artificial body of water created expressly to provide a reservoir of water to be drawn on as emergency might require to operate certain mills below the dam.

Prior to the 1925 litigation and in 1916 Federation's grantor, one Tenpas, acquired the lands surrounding the dam. This deed conveyed, among other things, " all water rights, water privileges and water power " embraced in a described deed executed in 1893. The latter instrument contained no express grant of water rights but in turn conveyed all rights contained in a described deed dated in 1875. The latter granted the right to use water in the pond " to convey (grantee's) machinery."

until it shall be lowered 18 inches below a full head and thereafter a described grist mill was given the first right to use the water when the pond was as low as 18 inches.

After Tenpas acquired the property he organized the Clymer Power Corporation and conveyed the property to the latter, which continued to use the dam for the manufacture of electricity until 1931 when it sold its franchise and discontinued use of the dam for power purposes. Subsequently, the corporation was dissolved and the lands reconveyed to Tenpas. In the deed from the latter to Federation he conveyed all of the water rights (1) transferred to him by the foregoing described deeds; (2) confirmed and established in Clymer Power Corporation by the judgment in the 1925 litigation and (3) owned and enjoyed by him or the corporation.

We consider first what rights Federation acquired by the terms and provisions of the conveyances from its grantor, Tenpas, and through him from his predecessors in title. Our attention has been directed to no document that conveyed to Tenpas, or any of his predecessors in title, any right to use the waters impounded by the dam except for the purpose, express or implied, of operating machinery. Similarly the decree in the 1925 litigation gave no larger right. While a conclusion of law in that action states that Clymer Power Corporation had the right to use the waters "by grant" the findings of fact limit such conclusion to the use of the waters to operate a power plant to generate electricity.

The issue to be decided thus becomes apparent. Federation is a corporation composed of 22 conservation clubs in Chautauqua County having a total of 3,500 members. Their interest in wildlife and nature directed their attention some years ago to the restoration of Jaquins Pond and environs as a refuge and habitat for wild life, fish and game. In addition to acquiring the dam and substantial acreage from Tenpas, Federation has at a cost of thousands of dollars caused the dam to be reconstructed. Chautauqua County contributed $10,000 to such construction which had been practically completed when this litigation commenced.

It is conceded, however, that the use of the impounded waters has nothing to do with the operation of machinery. It is solely for conservation purposes. Over 100 years ago the general rule was enunciated, applicable to grants of water powers, "that when the question arises whether by a grant of a sufficient quantity of water to propel a particular kind of machinery, the terms employed are used merely to indicate the quantity of water intended to be granted, or to restrict the use of the water

to the machinery specified, the former construction is to be favored, when the language of the grant will admit of such construction." (*Cromwell* v. *Selden,* 3 N. Y. 253, 255.) This rule has been followed through the years. (*Olmsted* v. *Loomis,* 9 N. Y. 423; *Wakely* v. *Davidson,* 26 N. Y. 387; *Comstock* v. *Johnson,* 46 N. Y. 615; *Mudge* v. *Salisbury,* 110 N. Y. 413 and *Carthage Tissue Paper Mills* v. *Village of Carthage,* 200 N. Y. 1.)

But when these decisions speak about the " use " of water, as the Official Referee correctly pointed out in his memorandum, the courts were adjudicating disputes relating to various types of machinery. None considers a " use " recognizably distinct from a grant to operate machinery of some kind. The Referee concluded, however, that the decision in *Loch Sheldrake Associates* v. *Evans* (306 N. Y. 297) had changed this rule. We are unable to agree with that conclusion. There the whole of a lake and its shores had been conveyed to plaintiff's predecessors but the deed reserved the right to dam the lake and draw waters therefrom within prescribed limits. These reserved rights were subsequently conveyed to defendant's predecessor in title. In passing the court stated (p. 302) that undoubtedly the reservation had been placed in the deed because at that time the grantors owned and operated a mill below the dam " but the reservation itself not only did not limit the water diversion to mill uses (it does not mention either the mill lot or the mill), but, on the contrary the reservation * * * embodied its own sole limitation, that is, that the dam be so used that the waters of the lake will not be drawn below low-water mark, or flooded above high-water mark." The court concluded that the right to draw off water in the lake was in defendant to the exclusion of plaintiff, and that there was no applicable limitation as to the purpose of such use. We consider this decision to embody the construction and interpretation of the provisions of a specific deed and that it did not enunciate a departure from or over-ruling of the prior general rule heretofore stated and here applicable. *Findley Lake Property Owners* v. *Town of Mina* (31 Misc 2d 356), also relied on by the Official Referee, is more nearly in point. We decline, however, to follow the broad rule therein enunciated (p. 383) in the light of the long-recognized more narrow rule in this State.

The express and unambiguous language of the grant to Federation through mesne conveyances reveals an intention to limit the use of water impounded by the dam in this artificial body of water to the operation of machinery and it must be given effect. The uplands may not be flooded for conservation purposes under the terms of such a grant.

We next consider the issue of the prescriptive rights, if any, to which Federation succeeded by adverse use of the dam and the flooding of adjacent lands. It has been stated that the impounded waters were last used in 1931 for the operation of machinery. From that year until 1947, when the dam was partially destroyed, it apparently was maintained by the joint effort of many with contributors to the effort being motivated by varying reasons. The Referee made a general finding to this effect but further found that appellants acquiesced therein by contributing money, labor and equipment to maintain and repair the dam. These issues, however, were only casually tried because of the emphasis placed by Federation upon their claimed rights obtained by deed.

Otherwise stated, we are unable to determine from the decisions, findings and conclusions of the Official Referee whether or not the separate defense alleged in paragraph seventh of the answer in the second action was found to have been proven. This alleged a prescriptive use of the dam for more than 15 years for nonmachinery purposes. Finding of fact numbered 20 and conclusion of law numbered four in the same action appear to make a similar determination but the former is weakened by a finding that the Caflisches acquiesced in such adverse use. Obviously an adverse use may not be established upon a finding that the owner of the lands flooded consented thereto. (Cf. *Durand* v. *Leigh,* 15 A D 2d 629.)

It may be surmised from the memorandum of the Referee that he in substance found that appellants were equitably estopped by their prior conduct from asserting that the dam should not be maintained but such a determination was not implemented in decision or findings. " Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action. As has already been pointed out, this rule is sometimes said not to be strictly one of equitable estoppel, but rather one of quasi estoppel by election." (19 Am. Jur., Estoppel, § 50, pp. 650–652.) Thus, in *Rothschild* v. *Title Guar. & Trust Co.* (204 N. Y. 458, 461) it was said : " Where a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree, at least, gives it effect so as to benefit himself or so as to affect the rights or relations created by it between the wrongdoer and a third person, he acquiesces in and assents to it and is equitably

estopped from impeaching it." (See, also, 21 N. Y. Jur., Estoppel, §§ 30–36, 54.)

The proof upon which such a finding might be made herein came into the case very casually. Thus, Federation's witnesses, Tenpas and Zentz testified that Carl Caflisch assisted financially and by labor in repairing the dam in 1943 and 1944. Caflisch himself admitted that he assisted in rebuilding the dam in 1941 and 1943–1944 " with some compensation from the Clymer Conservation Club." This, in substance, however, is all of the testimony upon the subject.

If the litigation is to be decided upon this issue we conclude that there should be a new trial where the subject may be more fully explored freed from the principal claim of Federation that we have found to be not sustained by the proof.

The judgment herein in the first action also determined title to a disputed parcel of land to be in Federation and restrained appellants from trespassing or obstructing a driveway thereon. Similarly, they were restrained from draining their sewer lines upon a highway and from there upon the lands of Federation. Appellants do not contend that these determinations were in any way erroneous. In view of this fact and inasmuch as a new trial is required we do not pass thereon.

The judgments appealed from should be reversed and new trials granted.

WILLIAMS, P. J., GOLDMAN, HALPERN and McCLUSKY, JJ., concur.

Judgments unanimously reversed on the law and facts and new trials granted, with costs to the appellants to abide the event.