DANIEL E. BULLARD, Appellant, *v.* THE SARATOGA VICTORY MANUFACTURING COMPANY, Respondent.

One claiming the right to interrupt the natural flow of a water-course must show that such interruption is consistent with a reasonable exercise of his right as riparian owner.

The question of reasonable use is ordinarily one of fact.

Injury to another riparian proprietor is not an invariable test of the right of such use.

Defendant is the owner of a cotton mill on F. creek, run by the waters of the creek; in the creek, above the mill, are certain reefs operating as natural dams, and by means of canals around the reefs defendant secures for the use of its mill, in addition to the natural flow of the stream, a large amount of water from the reservoirs formed by the reefs, enabling it during low water to run its mill without interruption. Defendant operates its mill only by day, keeping its gates closed at night to allow said reservoirs to refill; thus interrupting the natural flow of the stream in time of low water. The machinery in defendant's mill is adapted to the capacity of the stream in its ordinary stages, and, save in the dry season, the natural flow is sufficient to propel it without the use of the canals. Plaintiff owns a paper mill below on the same stream, operated by its waters; his business, to be successfully conducted, requires that his mill shall be run continuously day and night. If the flow of the creek was not interrupted by defendant, plaintiff's right to the water would enable him so to run his mill at all seasons and in all stages of the water. By the interruption plaintiff was seriously injured. In an action to recover damages for obstructing the natural flow of the stream, the trial court found that the detention of the waters by defendant was for the sole purpose of enabling it to use the same to propel the machinery of its mill; that it had not unnecessarily detained the water, and that its use of the stream was a reasonable one. *Held,* that defendant had the right so to detain, use and discharge the water, and that plaintiff had no cause of action.

*It seems,* that if the fact had been found, or was undisputed and should have been found, that a detention of a part of the water only would have secured the same advantage to defendant, leaving sufficient to pass its gates to operate plaintiff's mill, a different question would have been presented.

The burden, however, of proving this fact was upon the plaintiff; and in the absence of a finding to that effect, or of evidence satisfactorily establishing it, it could not be assumed.

(Argued December 20, 1878; decided September 16, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming

a judgment entered upon a decision of the court on trial at Special Term. (Reported below, 13 Hun, 43.)

This action was brought to restrain defendant from interfering with the natural flow of the waters of Fish creek, and to recover damages for such interference.

Defendant is the owner of a cotton mill situate upon said creek, known as "Victory Mill," run by water power from said creek. The dam creates a pond of about an acre in extent. Above this is a natural obstruction in the stream, consisting of a ledge of rocks extending across it, and creating a natural pond. This ledge is known as "Marshall's Reefs." Still further up the stream is another similar ledge known as "Winne's Reefs." Defendant constructed canals around these reefs, regulating the flow of water through them, when in use, by gates. These canals and gates are only used in dry seasons, when the water in the stream is much below the ordinary stage.

The further facts appear in the opinion.

*E. Fitch Bullard*, for appellant. Plaintiff had an absolute right to the enjoyment of the natural flow of the stream by and through his land. (1 Black. Com., 138; 2 Kent, 1; Wash. on Eas., 286, 287; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y., 47; *Clinton* v. *Meyers*, 46 id., 511; *Pixley* v. *Clark*, 32 id., 524, 525; Angell on Water-courses [6th ed.], 116; 2 Kent, 440, 441; *Merritt* v. *Brinkerhoff*, 17 J. R., 306) Defendant had only the right in times of drought to detain the water, for such time as it is necessary to enable it to be advantageously and profitably used. (*Clinton* v. *Meyers*, 46 N. Y., 518.) It was no cause for denying an injunction that defendant has large interests. (*Arthur* v. *Case*, 1 Paige, 447; *Corning* v. *Troy Iron Co.*, 40 N. Y., 191; Hill. on Inj., 184; *Bemis* v. *Upham*, 13 Pick., 169, 170; *Erie Canal Co.* v. *Walker*, 29 Penn., 173; *Raulet* v. *Cook*, 44 N. H., 517.)

*Esek Cowen*, for respondent. The use of the water by defendant was a reasonable use. (Angell on Water-courses,

§ 116; *Davis* v. *Getchell*, 50 Me., 602; *Hay* v. *Sterrett*, 2 Watts, 327; *Hartzall* v. *Sill*, 12 Penn., 248, 250; *Hetrick* v. *Deachler*, 6 id., 32; *Gould* v. *Boston Duck Co.*, 13 Gray, 442.) The mere lessening of the plaintiff's profits does not give him a right of recovery. (*Wheatly* v. *Chrisman*, 24 Penn., 298; *Brace* v. *Yale*, 10 Al., 45; *Pollit* v. *Long*, 3 T. & C., 232.)

Andrews, J. The defendant by means of the canals which it has constructed around Marshall's and Winne's reefs, has made subservient to its use at the "Victory" mill in time of drought, a large quantity of water detained by the reefs in the stream above. By opening the gates in the canals in the morning, and closing them at night, it secures for the use of its mills during working hours, in addition to the natural flow of the stream, the water stored in the reservoirs, formed by the reefs, and is thereby enabled, during times of low water, with occasional exceptions, to operate its mills without interruption from lack of water, which it would be unable to do if compelled at such times to rely exclusively upon the natural flow of the stream. The reefs operate as natural dams and the defendant, by the use of the canals, derives the same advantage as if it had constructed dams at the reefs, of capacity sufficient to hold a quantity of water equal to that which may now be drawn through the canals from the reservoirs above. It is plain, however, that the defendant, by the manner of using its gates and canals, disturbs and interrupts the natural flow of the stream. It operates its mill by day only. By opening the gates during the day it draws upon the water stored above the reefs. It closes them at night and keeps them closed until morning, to allow the reservoirs to refill. But while the process of replenishing the reservoirs is going on, the natural flow of the stream below is arrested, and it is only after a sufficient time has elapsed to accumulate sufficient water to fill the reservoirs, that the water passes over the reefs and regains its normal flow.

The controversy in this case turns upon the right of the defendant thus to obstruct the natural flow of the waters of the creek. The plaintiff is the owner of a paper-mill situated a short distance below the defendant's mill, operated by the water drawn from the same stream and he derives through various grants, the right to the use of more than one-half of the waters of the creek. The plaintiff operates his mill day and night, Sundays excepted, according to the custom of paper mills, and it appears from the findings in the case that the manufacture of paper to be successfully and profitably conducted requires that a paper-mill should be operated continuously. The plaintiff's mill can be run to advantage by the use of 3,486 cubic feet of water per minute. Fish creek has an annual average flow of 20,000 cubic feet per minute, and the judge at Special Term finds that during the lowest water that had been known in fifteen years prior to the trial, the natural flow exceeded 7,000 cubic feet per minute. It seems to follow as a necessary inference from the facts found, that if the flow of the creek was not interrupted by the acts of the defendant, the plaintiff would be enabled, under his grants, to operate the paper-mill continuously at all seasons of the year and in all stages of the water. It is only during times of low water, periods varying from four weeks to three months in each year, that the canals of the defendant are used. The machinery of the defendant's mill is adapted to the capacity of the stream in its ordinary stages or flow, and during nine months in the year, and in some years for much more than that time, the natural flow is adequate to propel the defendant's mill without the use of the canals. From the 13th day of May, 1870, when the plaintiff acquired title to the paper-mill, to the time of the commencement of the action on the 8th day of August, 1872, the paper-mill was stopped from want of water occasioned by the shutting of the gates 128 times, from which stoppages the plaintiff sustained damages to an amount exceeding $4,000. The court at Special Term found that the detention of

Opinion of the Court, per ANDREWS, J.

the water by the defendant was for the sole purpose of enabling it to use the same to propel its machinery in its mill; that it had not unreasonably detained the same, and that its use of the stream was a reasonable use. Upon the facts found the court held and decided that the defendant had the right to detain, use and discharge the waters of the creek in the manner and for the purpose in which it did detain, use and discharge them, and directed judgment dismissing the complaint upon the merits.

The law governing the rights of riparian owners to the use of natural streams and water-courses upon their premises has become, by the increase of manufacturing establishments and the large investments of capital in hydraulic works, of great importance, and the questions arising out of the conflicting interests of different mill owners, upon the same stream, are frequently perplexing and difficult. The maxim *"Aqua currit et debet currere ut currere solebat"* prescribes the general rule in respect to running streams, but it is to be interpreted and applied in connection with another rule which is well settled, that each riparian owner has a right to a reasonable use of the water. But the right to a reasonable use being common to all the proprietors, it is often difficult to determine whether a particular use is consistent with this common right. Injury to one proprietor in consequence of the use of the water by another is not an invariable test of the right of such use. For instance, the use for domestic purposes, or for the watering of catttle, is permitted, although by reason of the small amount of water in the stream such use may be injurious to the proprietor below and he may thereby be deprived of water sufficient for similar purposes. The law allows an appropriation of the water for such uses by the owner of premises which are so situated as to give him the first opportunity to use the stream, and this appropriation is not deemed to be an invasion of the common right. The question of reasonable use most frequently arises between mill owners on streams which afford a power available for the propulsion of machinery. The maxim that

water should be allowed to flow, as it is wont to flow, if strictly construed and applied, would prevent the use of such streams for manufacturing purposes. The construction of dams to collect a head of water, and of sluices and canals to convey and discharge it, is necessary to the operation of mills propelled by the water of a stream. The use of these appliances necessarily, to a greater or less degree, disturbs and interrupts the natural flow of the current, and often injures the proprietors below. But the fact that injury is occasioned to other riparian owners from the construction and use of dams, is not, in this case, any more than in the case of injury by the abstraction of water for domestic uses, decisive upon the question whether such use is permissible. In *Palmer* v. *Mulligan* (3 Caines' R., 308), SPENCER, J., said, that the erection of dams on all rivers was injurious in some degree to those who have mills on the same stream below, by withholding the water and by the greater evaporation in consequence of the increased surface, but that this was never thought to afford a ground of action." But dams may be constructed and used so as to interfere with the common right of riparian owners and subject the party maintaining them to an action. The party claiming the right to interrupt the natural flow of a water-course must show that such interruption is consistent with a reasonable exercise of his right as riparian owner. The question of reasonable use is ordinarily a question of fact to be determined upon a consideration of all the circumstances. (*Prentice* v. *Geiger*, 74 N. Y., 341, September, 1878.) "It is very difficult, and indeed impossible," says PARKE, B., in *Embury* v. *Owen* (6 Exch., 352), "to define, precisely, the limits which separate the reasonable and permitted use of the stream, from its wrongful application; but there is often no difficulty in deciding whether a particular use falls within the permitted use or not." There is no question upon the facts in this case that the manner of using the canals by the defendant is a serious injury to the plaintiff. The closing of the gates at night interrupts the flow of the stream and for a time prevents

the use of the plaintiff's mill. But the case upon the facts found is brought within the doctrine declared by SHAW, Ch. J., in *Gould* v. *The Boston Dry Dock Co.* (13 Gray, 443), which was approved by this court in *Clinton* v. *Myers* (46 N. Y., 511). In the case last cited, GROVER, J., referring to the case of *Gould* v. *The Boston Dry Dock Co.*, says : "The doctrine of this case is, that a party has a right to erect a dam across a stream upon his land, and such machinery as the stream in its ordinary stages is adequate to propel; and if the stream in seasons of drought becomes inadequate for that purpose, he has a right to detain the water for such reasonable time as may be necessary to raise the requisite head, and accumulate such a quantity as will enable him to use the water for the purpose of his machinery. I think this is the correct legal rule by which to determine the rights of riparian owners." There is no proof that the defendant detains the water wantonly or unnecessarily. Its machinery is adapted to the stream in its ordinary stages. The gates are only used in time of drought and for the sole purpose of supplying the water requisite to enable it, at such times, to operate its machinery. It · is said that the defendant should not entirely close its gates, and that if the gates at night were managed so as to allow one-half of the stream to flow to the plaintiff's mill it would enable his mill to be run without interruption, while, at the same time, the part of the stream detained would fill the defendant's reservoirs before morning. The difficulty with this position is, that the proposition of fact upon which it is based is not found. On the contrary, the court refused to find it, and the evidence does not satisfactorily establish the fact in favor of the plaintiff. The original finding was, that when ·the canals are used it requires from three-quarters of an hour to three hours after the defendant closes the gates at night for the water to fill and overflow the defendant's dams, so as adequately to supply the plaintiff's mill, but at his request a special finding was made of the length of each of the stoppages of the plaintiff's mill in consequence of the closing of the defendant's gates,

and it appears therefrom that nearly one-third of the stoppages continued nine hours or over, and one-half of them six hours or over.   It is quite impossible, upon this state of facts to say that if the gates were only partly closed the defendant's reservoirs would fill and the stream regain its normal flow before morning.   The burden of proving this fact, if the plaintiff relied upon it as the ground of affirmative relief in the action, was, I think, upon him.   The facts found establish the right of the defendant to fill its reservoirs at night, and it closed its gates for that purpose only.   In view of the finding that the detention of the water was reasonable, it cannot be assumed that it unnecessarily closed its gates, or that leaving them partly open would have secured the needed supply.   If the fact had been found that a detention of a part of the water only, at night,— leaving sufficient to pass its gates to operate the plaintiff's mill,— would have secured the same advantage to the defendant as it derives from closing them entirely or if the fact was undisputed and should have been found, a different question would have been presented.   But upon the case as it stands the plaintiff has failed to establish a right to equitable relief.

The exceptions to the admission of evidence are not well taken.   The question to the witness Mayhew, called simply for his knowledge, derived from observation, as to the fact whether the natural flow of the stream in ordinary stages was sufficient to propel the defendant's mill, and was unobjectionable.   There are other exceptions of the same character, and none of them require special consideration.

The judgment should be affirmed.

All concur, except RAPALLO, J., absent at argument, and DANFORTH, J., not in court at time of argument.

Judgment affirmed.