(Decided 17th June, 1891.)

LEVI PRICE *vs.* JAMES U. LAWSON.

*Pleading—Sufficiency of Declaration—Sec. 3 of Art. 75 of the Code—Water rights—Question for the Jury—Evidence—Prescriptive right.*

A declaration which alleges "that the plaintiff was possessed of a distillery, and by reason thereof was entitled to the flow of a stream of water for working the same, and the defendant befouled said stream of water, which rendered the same unfit for plaintiff's use, to the great injury and damage of plaintiff," is sufficient on demurrer, under the Code (sec. 3 of Art. 75) which provides that "any declaration which contains a plain statement of the facts necessary to constitute a ground of action shall be sufficient," notwithstanding it does not in so many words allege that the plaintiff was entitled to the use of the water in the race without having it polluted.

The plaintiff is the owner of a distillery for the manufacture of whiskey, and the water necessary for its use is supplied by a race, and the race is supplied with water from a natural stream. The race was dug by the common owner of the land on both sides of the race, for the sole purpose of supplying the distillery with water. When the common owner died, and his heirs, by their deed of partition, divided the property between themselves, they

Price *vs.* Lawson.

granted to the party, under whom the plaintiff claimed, the distillery property, with all the necessary and useful water privileges for the benefit of the distillery, as well as the race leading to the same; and to the party, under whom the defendant claimed, was reserved the right of using the water in said race, for the use of stock as theretofore used. For more than forty years the successive owners of the land on both sides of the race so used the water as not to pollute it or divert it from its natural flow. The defendant built a pen, including a part of the race, in which his cattle herded during the summer months, and standing in the water of the race the greater part of the day, so polluted it as to render it unfit to be used by the plaintiff for his distillery. HELD:

That whether the water was thus polluted or diverted by the defendant to the injury of the plaintiff, was a question proper to be submitted to the finding of the jury.

Evidence that the father of the plaintiff used the water for the purpose of distilling whiskey, and that it had been so used as far back as the memory of living witnesses could remember, and that it was pure water always, and that the owners of the defendant's land always recognized that right, is admissible to prove a prescriptive right to the use of pure water in the race for distillery purposes, as also to show how the race had been used by the former owners, and how the plaintiff's rights under the deed had been understood and recognized.

Where a witness had died since he testified in a suit between the plaintiff and defendant, in which the former had recovered damages from the latter for obstructing and diverting the water of the distillery race, the evidence of the witness as given in that case with reference to the use made of said race by a former owner of the land on both sides of the race, is admissible.

The record of a former suit between the parties in which the plaintiff had recovered damages against the defendant for obstructing and diverting the water of the distillery race, is admissible in respect of the question of damages, as tending to show a wanton and malicious interference on the part of the defendant, with the right of the plaintiff to the use of the water for his distillery.

APPEAL from the Circuit Court for Frederick County.

The case is stated in the opinion of the Court.

Price *vs.* Lawson.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—The plaintiff's counsel asked the plaintiff as a witness: "What building was there when you first knew the property?" the counsel stating that they offered to prove that it was an old distillery building in connection with the same offer as in the preceding exception. The defendant objected and the Court (McSHERRY, C. J. and LYNCH, A. J) sustained the objection. The plaintiff excepted.

*Third Exception.*—The plaintiff's counsel asked the plaintiff as a witness: "Was there ever any other building where the little race terminated than a distillery?" The defendant objected, and the Court sustained the objection. The plaintiff excepted.

*Fourth Exception.*—Stated in the opinion of the Court.

*Fifth Exception.*—The plaintiff offered in evidence the docket entries, and the record of the pleadings in the former trial, between himself and the defendant. The defendant objected, and the Court refused to allow such evidence to be given to the jury. The plaintiff excepted.

*Sixth Exception.*—The defendant's counsel asked the witness—the defendant himself—the following question: "Did the pen you put there cover more space than the two before did?" The plaintiff objected to the asking and answering of this question. The Court overruled the objection, and permitted the question to be asked and answered, the answer being: "Not as much as the two together did." The plaintiff excepted to the ruling of the Court.

*Seventh Exception.*—This exception was taken to the action of the Court in rejecting the prayers of the plaintiff—twenty-six in number—and in granting the prayer of the defendant, set out in the opinion of the Court. The reporting the prayers of the plaintiff is deemed unnecessary.

The verdict and judgment being for the defendant, the plaintiff appealed.

Price *vs.* Lawson.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, and BRISCOE, J.

*J. E. R. Wood,* and *Milton G. Urner,* (with whom were *John C. Motter,* and *Clayton O. Keedy,* on the brief,) for the appellant.

Reference was made to the following authorities:

*Gould on Waters,* secs. 311, 312; *Klaer vs. Ridgway,* 86 *Penn. St.,* 529; *Chad vs. Tilsed,* 6 *Eng. Com. Law,* 174; *Lawson vs. Price,* 45 *Md.,* 123; *Angell on Watercourses,* sec. 128; *Clarke vs. Dederick,* 31 *Md.,* 148; *Green vs. Ford,* 35 *Md.,* 82; *Cole vs. Hebb,* 7 *G. & J.,* 20; *Prentice vs. Geiger,* 74 *N. Y.,* 341; *Curtis vs. Ayrault,* 47 *N. Y.,* 73; *Miller vs. Miller,* 9 *Pa. St.,* 74; *Lampman vs. Milks,* 21 *N. Y.,* 505; *Fleming's Appeal,* 65 *Pa. St.,* 444; *Gillett vs. Johnson,* 30 *Conn.,* 180; *Avon Mfg. Co. vs. Andrews,* 30 *Conn.,* 476; *Twiss vs. Baldwin,* 9 *Conn.,* 291, 303; *Barnes vs. Burt,* 38 *Conn.,* 541; *Northam vs. Hurley,* 1 *Ellis & Blackburn,* (72 *E. C. L.,*) 665; *Whitehead vs. Parks,* 2 *Hurl. & Nor.,* 870; *Gladfelter vs. Walker,* 40 *Md.,* 1; *Kilgour vs. Ashcom,* 5 *H. & J.,* 82.

*C. V. S. Levy,* and *William P. Maulsby, Jr.,* (with whom were *Carlton Shafer,* and *J. Roger McSherry,* on the brief,) for the appellee.

The following authorities were referred to:

*Washburn on Easements,* sec. 38; *Washburn on Easements,* 334, 408; *Chad vs. Tilsed,* 6 *Eng. Com. Law,* 202; *Manning vs. Wasdale,* 31 *Eng. Com. Law,* 433; *Wakely vs. Davidson,* 26 *N. Y.,* 393; *Bushnell vs. Prop'rs of Ore Bed,* 31 *Conn.,* 150; *Comstock vs. Johnson,* 46 *N. Y.,* 615; *Carroll's Lessee vs. The Granite Manufacturing Co.,* 11 *Md.,* 399; *Middlesex Co. vs. McCue,* 149 *Mass.,* 103; *Lovejoy vs. Lovett,* 124 *Mass.,* 270; *Stone vs. Clark,* 42 *Mass.,* 378; *Livingstone vs. Ten Broeck,* 16 *Johns.,* 14; *Prentice vs. Geiger,* 74 *N.*

*Y.*, 346; *Choate vs. Burnham*, 7 *Pick.*, 274; *Derlin on
Deeds*, sec. 1042; 1 *Greenleaf on Evidence*, (14th *Ed.*) *sec.*
293.

ROBINSON, J., delivered the opinion of the Court.

The plaintiff is the owner of a distillery for the manu-
facture of whiskey, and the water necessary for its use is
supplied by a race, and the race is supplied with water
from a natural stream, called the "Trout Branch." The
race was dug along a hill side, the east bank of which
is the solid ground of the hill side. The west bank was
made with dirt thrown from the trough in making the
race, and in consequence of which it is much higher than
the eastern bank.

The defendant is the owner of the land on both sides
of the race. Prior to 1813, the distillery, the race, and
the lands on both sides of the race, all belonged to George
Cook. In that year, his heirs-at-law, by deed of parti-
tion, divided among themselves what before had been a
common property. To John Cook, under whom the
plaintiff claims, was assigned the *distillery* and *water
rights* and *fifty-six* acres of land adjoining, the terms of
the deed of partition being as follows: "The said John
Cook is to have and enjoy all the necessary and useful
water privileges for the benefit of his said mill or mills;
that is to say, all the land covered with water at this
time by the mill-dam, as well as the race leading from
the dam to the mill; also the land covered with water in
what is called the "Little Race," with the liberty of
repairing or improving said mill-dam, or either of the
races, to suit his convenience; the right of using the
water in said races for the use of stock as heretofore, is
reserved to the said Thomas Cook, but no other use is
to be made of the water to the injury of the said John
Cook, his heirs or assigns." The "Little Race" men-
tioned in the deed is the race that supplies the distillery

with water. Besides the distillery, there was also a flour mill on the lands assigned to John Cook, and this mill was supplied with water from a dam by means of another race, and this is the dam referred to in the deed.

To Thomas Cook, under whom the defendant claims, was assigned the lands on both sides of the distillery race, with the reservation to use the water of the race for his stock, as heretofore used.

This is a suit by the plaintiff, to recover damages of the defendant for the *befouling, diversion* and diminishing of the water in the race leading to the distillery.

At the trial below, the plaintiff proved, by persons who had known the property for more than forty years, that prior to 1870, a worm fence ran along the east bank of the distillery race; that this fence was taken away and replaced by a post and rail fence, about three feet from the race. To enable the stock pasturing in the fields on the east side of the race to get water, the fence at two points along the race, diverged from a straight line and dipped down to the race. There is some difference of recollection among the witnesses, whether the fence at these two watering places extended all the way across the race, but they all agree that it did not extend over and include the west bank; and further, that stock in the east fields could not get on or over the west bank of the race. So these two watering places, each about one panel of fence in length, while they afforded every opportunity for stock to drink, were not large enough and did not invite them to herd in the race and pollute the water. Sometime, however, in 1880, the defendant built a *pen*, triangular in shape, running up the race about seventy-five feet, thence across it ninety-five feet, to the fence dividing the fields on the west side, and thence forty-five feet to the east bank. In this pen, the defendant's cattle herded during the summer months, and standing in the water of the race the greater part of

the day, they so polluted it as to render it unfit to be used by the plaintiff for his distillery.  In addition to this, the west bank was so tramped down by plaintiff's stock and rooted away by his hogs, as to divert the natural flow of water in the race, thereby unnecessarily diminishing the quantity of water to which the plaintiff was entitled.  Before this pen was built, the plaintiff further proved, that the water had always been pure, and as such, suitable to be used in manufacture of whiskey; but that since it was built, the water was not only thick and muddy, but so polluted by the filth or droppings of the cattle, as to make it unfit to be used for distillery purposes.

Upon this proof, the plaintiff offered *no less than twenty-six instructions*, all of which the Court refused to grant; and, at the instance of the defendant, instructed the jury, that there was "no legally sufficient evidence to show any user by the defendant of the water in the race in question, over and beyond the user, which was given him under the deed of partition offered in evidence," and their verdict must be for the defendant.  This instruction is, in the view we take of this case, clearly erroneous.  By the deed of partition, John Cook under whom the plaintiff claims, was entitled in the language of the deed *"to have and enjoy all the necessary and useful water privileges* for the benefit of his said mill or mills," and, not only the water rights, but to "all the land covered with water" in the race, the reservation to Thomas Cook, one of the grantors, being, *"to use the water in the race for his* stock *as heretofore,"* but *no other use of the water* says the deed, shall be made "to the injury of John Cook, his heirs or assigns."

Now, the race in question was dug by the common owner of the land on both sides of the race, for the sole purpose of supplying the distillery with water.  And when the common owner died, and his heirs, by their

deed of partition, divided the property between themselves, they granted to John Cook the distillery property, and leaving nothing to implication, the deed says together "with all the necessary and useful water privileges for the benefit of the distillery." No one can question the right of John Cook, and those claiming under him to the *necessary and* reasonable use of the water in the race for the purposes of his distillery. Now the reservation in the deed to Thomas Cook is the right to use the water for his stock, as heretofore. It can hardly be necessary to say that the grant of water rights and privileges carries with it everything necessary for the *reasonable* and *beneficial enjoyment* of such rights and privileges. And, further, that a grant and reservation will be construed *most strongly against the* grantor, and *most beneficially for the grantee.*

Here the reservation to the grantor is the use of the water in the race for his stock, and by no sound rule of construction, can the *incidental use* thus reserved be construed to defeat or interfere with *the dominant right of the grantee* to the beneficial use of the water for his distillery. It was to be used by the grantor, it is true, in the manner it had been used "heretofore," but this reservation is coupled with an express grant that *"The said John Cook is to have and enjoy all the necessary and useful water privileges for the benefit of his said mill or mills."* These water rights and privileges the grantee, it is clear, could not enjoy, if the defendant is to be permitted to pollute the water so as to make it unfit to be used for the purposes of the distillery. And the proof shows that for more than forty years the successive owners of the land on both sides of the race had so used the water as not to pollute it, or divert it from its natural flow. And it was not until the *triangular pen* was built by the defendant, in which his cattle herded and stood during the summer months, that the plaintiff was deprived

of the necessary and beneficial use of the water for his distillery. Such was the plaintiff's proof, and whether the water was thus polluted or diverted by the defendant were questions which ought to have been submitted to the finding of the jury. The principles of law controlling and governing the case are substantially and correctly stated in the several instructions offered by the plaintiff. At the same time we cannot commend the practice of offering so many instructions, which, if granted, would it seems to us, tend to confuse and mislead the jury. Here are no less than *twenty-six instructions* offered by the plaintiff, when the whole law of the case might have been embodied in four or five prayers.

The Court erred, also, we think, in sustaining the demurrer to the first and second counts in the plaintiff's declaration. The first count alleges: "That the plaintiff was possessed of a distillery known and called Price's Distillery, in Frederick County, Maryland, and by reason thereof, was entitled to the flow of a stream of water for working the same; and the defendant befouled said stream of water, which rendered the same unfit for plaintiff's use, to the great injury and damage of plaintiff." Now, this count is, it is said, defective because it does not in so many words allege that the plaintiff was entitled to the use of the water in the *race without having it polluted.* We shall not stop to inquire what force there might be in this contention, if the question was one to be decided by the technical rules of pleading at common law. Be that as it may, our Code provides that "any declaration which contains a plain statement of the facts necessary to constitute a ground of action shall be sufficient." Here the declaration alleges that the plaintiff was possessed of a distillery, and, as the owner thereof, was entitled to *the flow of a stream of water for working the same,* and that the defendant *befouled said stream* of water and *thereby rendered it unfit* for plaintiff's use. And this seems to us substantially an allegation that the plaintiff was entitled

to the flow of a stream of water suitable in quality for working his distillery, and that the defendant befouled it, and, thereby rendered it unfit for plaintiff's use—"All the facts necessary to constitute a ground of action," and such is the language of the Code, are thus plainly stated, and this being so, the demurrer ought to have been overruled.

Passing, then, from these rulings, we come to the several exceptions in regard to the evidence.

In the first exception, the plaintiff himself, being a witness, testified that he got the distillery from his father in 1867, and was then asked by his counsel, to state: "For what purposes did your father use the water of the race in controversy?" the counsel stating that they proposed to prove by witness that his father used the water in question for the purpose of distilling whiskey, to be followed by other testimony that "it had been so used as far back as the memory of living witnesses could remember, and that it was pure water always, and that the owners of the defendant's land always recognized that right, for the purpose of proving a prescriptive right to so use it, and to have pure water for that purpose." The plaintiff had offered in evidence, it is true, the deed of partition, by which the use of the water for the distillery was granted to John Cook, under whom the plaintiff claimed ; but it was competent for him to prove also a prescriptive right to the use of pure water in the race for his distillery.

And besides, it was competent evidence to show how the race had been used by the former owners, and how the plaintiff's rights under the deed had been understood and recognized. "When a grant of remote antiquity contains general words, the best exposition of such grant is long usage under it." *Chad vs. Tilsed,* 6 *Eng. C. L. Rep.,* 173. For the same reasons the testimony offered in the second and third exceptions ought to have been admitted.

Price *vs.* Lawson.

In the fourth exception the witness testified that he was plaintiff in a former suit against the defendant, involving the right to the use of the water in the race now in controversy ; that S. G. Cockey was a witness in that case, and that he heard Cockey's testimony; that Cockey had since died. The plaintiff's counsel then asked witness to state what Cockey testified to in said case, with reference to the use made of said race by Norris, a former owner of the land on both sides of the race, and how Cockey's father recognized that use. The witness Cockey being dead, it was clearly competent for the plaintiff to prove what he testified to in a former suit between the plaintiff and defendant, in regard to the use of the water of the race now in controversy. And the record, too, in that suit was also admissible. In that action the plaintiff had sued and recovered damages against the defendant for obstruction of and diverting the water of the distillery race, and the record in that case was admissible as regards the question of damages. If the defendant wantonly and wilfully polluted or diverted the water the plaintiff was entitled to recover exemplary damages, and upon the question whether the interference by the defendant with the rights of the plaintiff to the use of the water for his distillery was a wanton or malicious interference, the record showing a former suit between the parties in regard to the same matter was admissible in evidence.

We see no objection to the evidence offered by the defendant in the sixth exception.

For the reasons we have stated the judgment must be reversed and new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 17th June, 1891.)