(45 Misc. Rep. 432.)

### REESE et al. v. CITY OF JOHNSTOWN.

(Supreme Court, Trial Term, Fulton County. December, 1904.)

WATER COURSES—POLLUTION—INJUNCTION.

    The riparian owners on a stream sued to enjoin a city from discharging sewage into it. It was shown that plaintiffs and their predecessors discharged mill refuse in the stream, and their pollution of it was prior to that of the defendants, and also that many other persons drained into the stream. *Held*, that the injunction would be denied.

Action by Cynthia Reese and others against the city of Johnstown. Complaint dismissed.

Andrew J. Nellis, for plaintiffs.
Edwin Baylies, for defendant.

JOHN M. KELLOGG, J. The plaintiffs and their predecessors in title have for years been sewering from their three houses and shop or mill into the Cuyadutta creek, and the ancestor of the plaintiffs, from whom they derive title, formerly owned a skinmill near their present property, which also sewered into the creek. The city of

Johnstown sewers into the same creek, as does the city of Gloversville above upon the stream, and various skinmills and privies drain into the stream along its course, and garbage and foul matter of all kinds are thrown into it. The plaintiffs bring this action, under section 1660 of the Code, to compel the city to stop sewering into the stream, and to recover damages against it. It does not appear whether the city, or the plaintiffs and their predecessors in title, first began fouling the stream. The city and all the owners along the stream have the right to make any reasonable use of it, but must not divert or pollute it to the detriment of the lower proprietors. What is a reasonable use depends upon the particular circumstances, and the use which is made of the stream by the proprietors below. "The judge was careful to say that the failure to put that land to any beneficial use was no defense to an unreasonable and improper use of the stream by the defendants, but that the fact might be considered in determining whether defendants' use of the stream was reasonable and proper. In the course of the trial the plaintiff, through his counsel, disclaimed any right to recover substantial damages. The relief sought was a permanent injunction. In deciding whether this drastic remedy should be applied, it was the duty of the court to ascertain whether defendants' use of the stream was reasonable or not. The decision of this question depended not alone upon the extent and nature of the impurities projected into this stream, but upon the location of plaintiff's land, the use to which it was devoted, the effect upon it of any impurities in the stream, and the extent to which the pollution of the waters may have been attributable to other sources and causes than those charged in the complaint. All of these matters bear upon the question of reasonable use." Townsend v. Bell, 167 N. Y. 462, 471, 60 N. E. 757; Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643. "Surrounding circumstances, such as the size and velocity of the stream, the usage of the country, the extent of the injury, convenience in doing business, and the indispensable public necessity of cities and villages for drainage, are also taken into consideration, so that a use which under certain circumstances is held reasonable under different circumstances would be held unreasonable. It is also material, sometimes, to ascertain which party first erected his works and began to appropriate the water." Strobel v. Kerr Salt Co., 164 N. Y. 320, 321, 58 N. E. 147 (51 L. R. A. 687, 79 Am. St. Rep. 643).

The evidence shows that the plaintiffs' predecessor in title began sewering into the stream as soon as the waterworks were put into the village. And the evidence tends to show that, after he began sewering into the stream, the stream as it reached him was comparatively pure. From this we may properly infer that the city did not begin sewering into the stream prior to the time the plaintiffs and their predecessor began to make such use of it. It would not be right to prevent the city sewering into this stream at the instance of parties who themselves are doing the same act. They at least ought to be required to stop fouling the stream before they can ask that the city be prevented from making the same use of it which they themselves make. A court of equity ought not, therefore, to grant the plaintiffs any re-

lief until they are free from committing similar acts themselves. If we take the other view of the case—that any sewage by the defendant into the stream is unlawful and a nuisance, it is equally unlawful and a nuisance for the plaintiffs to sewer into the stream. And it is only fair to assume that the smell which affects the plaintiffs' premises is caused in part by their own sewage. Thus we have two wrongdoers, each acting separately, but their concurrent wrongful acts unite, and cause a smell which injures the plaintiffs, who are of the wrongdoers. In many cases where an innocent party receives an injury from the separate wrongs of two persons, the court may apportion the damages, and charge against each the result of his own acts, although often it is pretty near guesswork to determine how much of the damage each one actually commits. But where one of the wrongdoers is the plaintiff himself, a court of equity is not called upon to measure up between him and a party guilty of similar acts the extent of their respective wrongs, determine which is the greater aggressor, and strike a balance in favor of the lesser offender. The plaintiffs' counsel treats this as an equitable action, and plaintiffs are only entitled to relief upon equitable considerations, and the facts shown are such that the plaintiffs ought not to be allowed to maintain an action against the city for fouling the stream until they are substantially blameless in the respect which causes the evil from which they suffer. From the fact that the city has, during the pendency of the action, substantially completed a sewage system which will take its sewage out of the creek, the plaintiffs will not suffer any further annoyance in that respect, and equitable relief would seem to be unnecessary if it were otherwise proper.

I have spoken as though the acts of the plaintiffs and the defendant alone caused the injury. Their acts caused but a small part of it. The greater part comes from the throwing by individuals along the route of garbage and refuse into the stream, and from private drains and privies, and the sewage from the skinmills and other refuse going into such stream.

The complaint is therefore dismissed, with costs against the plaintiffs.

Complaint dismissed, with costs against plaintiffs.