THE UNITED PAPER BOARD COMPANY, Appellant, *v.* THE
IROQUOIS PULP AND PAPER COMPANY, Respondent.

**Water rights — construction of deeds conveying land and
appurtenant water rights — effect of reservation and exception.**

1. The right to the use of the water of a flowing stream, navigable
or unnavigable, arises by mere operation of law as incident to the
ownership of the bank and is a part of the estate of the owner.   It
is a valuable property right which can be severed from the riparian
land by grant, condemnation, relinquishment or prescription.   Owners
of a single tract may release it or grant it to another or restrict or
reserve it to specified uses or places.

2. In construing a deed conveying land and appurtenant water
rights, as between the grantors and the grantee, each doubtful expres-
sion will be understood in the sense most favorable to the grantee.
The right to use the water, as primarily granted, will not be impaired
by an exception in the grant further than necessary.

3. The dominant and servient characters impressed on water power
and water privileges by their common owner, by recorded grants, sur-
vive among his grantees.

4. Defendant's predecessor in title, who owned a tract of land on
the eastern bank of the Hudson river with the lawful right to take
and use waters of the river impounded by a dam erected by the
state, subject to certain rights of the state in and to such waters, sold
to plaintiff's predecessor in title the southern part of such tract,
retaining the remainder on which were sawmills operated by the
grantors.   With such land, they conveyed to the grantee the right
to construct and use from the river above the dam a canal or flume
through the grantor's land and by means thereof to conduct " one-
half of all the water flowing in the   *   *   *   river at that point "
to paper mills to be erected by the grantee, or his successors in title,
on the land conveyed to them, saving, excepting and reserving there-
from and thereout the right to use and draw so much of  the same
as shall be necessary to operate the machinery of the sawmills situated
upon the land retained and owned by the grantors, whenever such
water shall not be required by the grantee, his heirs or assigns, for
actual use in propelling machinery or for manufacturing purposes
on the land conveyed to him, and also whenever the water of said
river shall be actually flowing over the crest of the dam.   Thereafter
the sawmill tract was conveyed to the defendant which built pulp
and paper mills upon the site of the sawmill.   The question is not

one of conflicting riparian rights but has to do only with the flowage of the waters. *Held,* upon examination of the evidence and construction of the deeds involved, that the language of the grant to defendant was not used and cannot be received in its literal meaning because (a) the state had certain prior and controlling rights to all or any part of the waters flowing over the dam; (b) the grantors had not the ownership or·control of and could not grant " one-half of all the waters flowing in the   *   *   *   river at that point." *Held, further,* that defendant's grantors, by their deed to plaintiff's predecessor in title, transferred to the grantee the entire right, which was lawfully incident and annexed to the lands bordering on the river at and above the dam owned by said grantors at the time of its execution and delivery, to withdraw and use, by means of a canal or conduit, the volume and momentum of the dammed waters, except such part of such right to withdraw and use as the grantors reserved to themselves by the exception in the deed.

*United Paper Board Co.* v. *Iroquois Pulp & Paper Co.,* 174 App. Div. 902, reversed.

(Argued January 16, 1919; decided March 11, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 12, 1916, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William S. Ostrander* and *James Todd* for appellant. The grant by Thomson and Dix to the Thomson Pulp and Paper Company, construed in the light of the circumstances, conveyed absolutely all the power then owned by the grantors, to wit, one-half of the waters of the river, reserving only 250 horse power for the operation of the sawmill, the use of which was subject to the prior right of the grantee. And as appurtenant to, or a part of, the one-half of the water of said stream at that point was a right to draw from the pond formed by the dam the waters pertaining to the westerly shore, so long as the westerly riparian proprietor was not using

the same, and this right passed under the grant to the Thomson Pulp and Paper Company as an appurtenance to the water privileges of the east shore. (*Craig* v. *Wells,* 11 N. Y. 315; *Borst* v. *Empie,* 5 N. Y. 33; *Schoonmaker* v. *Hoyt,* 72 Hun, 407; *Blackman* v. *Striker,* 142 N. Y. 555; *Cunningham* v. *Knight,* 1 Barb. 399; *Ives* v. *Van Augen,* 34 Barb. 566; *Smith* v. *Cornell University,* 21 Misc. Rep. 220; *Cocheco Mfg. Co.* v. *Whittier,* 10 N. H. 305; *Cromwell* v. *Selden,* 3 N. Y. 253; *Wakeley* v. *Davidson,* 26 N. Y. 387.) The reservation in the Thomson and Dix deed, in favor of the sawmill of the grantors, should be construed as a measure of power or quantity reserved by the grantors (should the water not be needed by the grantees), thus limiting the use of a quantity not exceeding that then used by the sawmill. (*Covel* v. *Hart,* 56 Me. 518; *Comstock* v. *Johnson,* 46 N. Y. 615; *Bigelow* v. *Battle,* 15 Mass. 313; *Wakeley* v. *Davidson,* 26 N. Y. 387; *Mudge* v. *Salisbury,* 110 N. Y. 413.)

*Edgar T. Brackett, Joseph A. Kellogg* and *Herbert Van Kirk* for respondent. Thomson and Dix by the conveyances to plaintiff's predecessor in title attempted to convey something to which they had not the slightest title and neither they nor their grantors can maintain any action in vindication of rights claimed to have been given by such conveyance. (*Roe* v. *Strong,* 107 N. Y. 350.) The defendant is in no way estopped from its use of the waters thus owned by the state and flowing in the Hudson river by anything that Thomson and Dix covenanted with the plaintiff or its immediate grantor. (*Veeder* v. *Mudgett,* 95 N. Y. 295; *Mutual* v. *Corey,* 135 N. Y. 326; *Scovill* v. *Thayer,* 105 U. S. 143; *Mygatt* v. *Coe,* 124 N. Y. 212; *Coan* v. *Osgood,* 15 Barb. 583; *Trolan* v. *Rogers,* 88 Hun, 422; 1 Greenl. on Ev. § 189; *Williams* v. *Barkley,* 165 N. Y. 48; *Norton* v. *Keogh,* 42 Hun, 612.)

COLLIN, J.  The plaintiff seeks a judgment perpetually restraining the defendant from diverting or receiving waters of the Hudson river in excess of a designated quantity and to recover damages for a diversion.  The Special Term directed a judgment dismissing the complaint.  The Appellate Division affirmed the consequent judgment by a non-unanimous decision.  We have decided that the facts found by the Special Term or the proofs before it do not support its decision.

Each of the parties owns and operates upon the eastern bank of the Hudson river, in the town of Greenwich, Washington county, mills for the manufacture of pulp for paper and paper board.  Each utilizes for the purposes of power waters of the Hudson river, which flow southerly. The lands of each are contiguous to the river and, hence, each is a riparian owner.  The lands of both were in 1888 of a single tract, owned by Lemon Thomson and John A. Dix.  Such ownership is unquestioned.  In 1888 Thomson and Dix duly granted, by a warranty deed, duly recorded, the lands and rights which the plaintiff, in virtue of mesne grants, owns.  The lands granted formed the southern part of the single tract, bordered on the river and are described by metes and bounds in the deed which conveys them, " with a right," as it continues, " to excavate, provide, build, maintain and use a canal flume or conductor for water with necessary or suitable bulkheads or head-gates therein and for carrying or conveying water from the Hudson River at some point above the dam crossing said river above the sawmill of said parties of the first part on the easterly side shore or bank thereof which shall be approved as to location by said Thomson and running from thence southerly on along and by a course and location also to be approved by said Thomson and Dix to and unto the northerly end of the hereinbefore described premises and the right to take have and use and enjoy by means of such canal flume or conductor one half of all the water flowing in the Hudson

River at that point saving excepting and reserving therefrom and thereout so much of said waters and the right to draw and use the same whenever the same shall not be required by the said party of the second part his heirs or assigns for actual use in propelling machinery or for manufacturing purposes on the lands hereby conveyed and at all times when the water of said river shall be actually flowing over the crest of the said dam as shall be necessary or required to propel the machinery of and supply power for operating the sawmills appurtenances and appliances now owned by said Thomson and Dix on and below said dam." " The sawmills, appurtenances and appliances " thus mentioned were on the lands retained by Thomson and Dix north of or upper to those conveyed and near the river bank. Adjacent to or a short distance north of the site of the sawmills was " the dam crossing said river " mentioned in the deed and commonly known as the Saratoga dam. It extended from the western bank of the river through about eight hundred feet to a point about sixty feet westerly from the river's eastern bank. This space of sixty feet was and is occupied in part by a pier contiguous to the dam and east of the pier by posts and head-gates. It was erected by the state of New York in, and has been maintained by the state from, about 1870, and creates a level in the river above the same for a distance of about three miles. It was thus erected prior to the grant of 1888 of Thomson and Dix or their ownership of the single tract. The single tract extended for some distance above and below the easterly end of the state dam. The sawmill (for the findings use the singular number as descriptive of it) mentioned in the deed of Thomson and Dix, was supplied with water for power purpose through a raceway or intake having its mouth or opening in the head-gates of the dam. In November, 1889, mills had been constructed upon the lands now of the plaintiff. There had also been constructed the canal flume or conductor, authorized

by the grant of Thomson and Dix for conveying water, from a point in the river, some distance above the intake or raceway to the sawmill, to the pulp and paper mill on the lands now of the plaintiff for power purpose.   Of its length of about fifteen hundred feet, five hundred feet were in the lands then remaining to Thomson and Dix and one thousand feet in the conveyed lands.

In 1902 the devisees of Lemon Thomson and John A. Dix duly granted by deed to the defendant the northerly part of the tract upon which were the sawmill and the raceway from the head-gates to it.   The deed described the lands by metes and bounds and stated: " It is intended by this deed to convey and this deed does convey to the party of the second part all the right, title and interest in the above described lands, water rights, privileges of all kinds and water power of the Hudson river connected with or in the neighborhood of said premises or at the east end of the state Saratoga dam at Thomson, which belonged to Lemon Thomson at the time of his death, or which now belongs to the said parties of the first part or either of them."   The mills of the defendant were built upon the site of the sawmill and its appurtenances and are supplied with water for power purpose through the raceway or intake formerly to the sawmill.   The mouth or the size of the raceway has not been enlarged since the conveyance of Thomson and Dix in 1888.   Through the raceway it receives the water operating its mills and in quantities largely in excess of the quantity required in 1888 to supply power for operating the sawmill.   The plaintiff uses and always has used since 1902 more water than the defendant and the relative capacity of the water wheels of the respective parties shows that the plaintiff's wheels consume more water at all times than the defendant's wheels.

Notwithstanding the range which the briefs and arguments of counsel have taken, the principles which determine the issues at bar are few and not obscure.

The parties are in contention concerning the quantity of flowage through the raceway or intake to the mills of the defendant. The plaintiff asserts that the defendant could and can, under the deed of Thomson and Dix to the original predecessor of plaintiff and the deed of 1902 to the defendant, rightfully and lawfully receive at its mill not more than the quantity "required to propel the machinery of and supply power for operating the sawmills, appurtenances, and appliances" in 1888, and such quantity only: (a) when the water was not needed by plaintiff's mill, or (b) when water was flowing over the crest of the Saratoga dam. The defendant asserts that inasmuch as the plaintiff has received at all times and does receive at its mill a quantity greater than the defendant has received or receives, the defendant does not receive one-half of the waters flowing in the river at the point of the mouth of the flume to the plaintiff's mill and, therefore, more than the one-half to which plaintiff is entitled, under the deed, remains for it. The dispute, therefore, has to do only with the flowage of the waters. The adjudication of it can be had only through the determination of the meaning and effect of the deed or grant of 1888 appealed to by both parties. There is not an issue between either party and the state or between the parties as an upper and lower riparian owner. The right of the plaintiff to the flowage through the flume or canal to its mill is created, defined and controlled by the grant and its terms. The right, broadly and generally speaking, is to take water, for the purpose of power at its mill, from the river at a point fifteen hundred feet above the mill, through and by means of a conduit.

Such right was vested in or owned by Thomson and Dix at the time they executed and delivered the deed. They owned the land at and intermediate the points at which the water was under the grant, to be taken from and returned to the river. The rule of law is familar that each owner of land contiguous to a natural water-

course has a right, as owner of such land and as naturally connected with and incident to it, to the natural flow of the stream along his land and its descent, and all the force to be derived therefrom, for any domestic or hydraulic purpose to which he may decide to apply it. He may, by means of a ditch or conduit, withdraw water from the stream and cause it to flow unnaturally through his land for agricultural, industrial or other purpose, provided he causes it, in its substantial volume, to return upon his land to the stream. In order that he may enjoy those rights every owner is bound to use the water reasonably as it flows, so as not to injure the equal rights of all the owners. Whether or not a use or detention of the water is reasonable must be determined by the extent and capacity of the stream, the uses to which it is and has been put, and the rights that other owners on the stream have. The essential question in each particular case is what is reasonable under the conditions and circumstances there presented. Those are riparian rights, are natural and inherent, and a part of the estate of each riparian owner. (*Pierson* v. *Speyer*, 178 N. Y. 270; *Clinton* v. *Myers*, 46 N. Y. 511; *Bullard* v. *Saratoga Victory Manufacturing Co.*, 77 N. Y. 525.)

Under the findings and the proofs in the record before us, we must presume that the physical conditions at the locality, as we have described them, rightfully and lawfully existed. We must presume that the dam was legally constructed, legally accumulating above it the water so that the potential power of the water of the river had become a reality, and creating for Thomson and Dix, as riparian owners of the land contiguous to and above and below it, the same rights in the flow, use and control of the impounded waters (subject to the superior right of the state for the purpose of the Champlain canal, not questioned nor involved here) as would have come to them had they and the other riparian owners

constructed it. Manifestly Thomson and Dix, in 1888 while they owned the single tract, could lawfully have constructed the mills and the conduit from the river to them, subsequently constructed by their grantee.

Those rights of Thomson and Dix were vested in them in virtue of their ownership of the bank of the river. Riparian rights are the various privileges in the navigable or unnavigable waters, which are incident, under the law of the state, to the ownership of the shore or bank. In such ownership they have their origin and, generally speaking, they are annexed exclusively to land which borders upon the waters. The rights we have spoken of did not depend to any extent upon whether or not the river was navigable at that part, or whether or not the ownership of Thomson and Dix extended to its center line rather than to high-water mark. While as to certain water rights and privileges of riparian owners those questions have materiality and importance, they are outside of our present relevant consideration. The rights involved in the instant dispute arose from the lateral contact of the lands of Thomson and Dix with the waters of the river, arrested and restrained by the dam. The navigability of the river or the ownership of the soil over which the waters flow neither increase nor diminish rights of such a nature. They are at no point of the discussion here connected with the right of navigation or other public right or with the occupation or use of the bed of the stream. The right to the use of the water of a flowing stream, navigable or unnavigable, arises by mere operation of law as incident to the ownership of the bank and is a part of the estate of its owner. (*Lyon* v. *Fishmongers Company*, L. R. 1 App. Cas. 662; *Sisson* v. *Cummings*, 35 Hun, 22; *Webb* v. *Portland Manufacturing Co.*, 3 Sumn. 189; *Danes* v. *State of N. Y.*, 219 N. Y. 67; *Duckworth* v. *Watsonville W. & L. Co.*, 158 Cal., 206, 216; *Washington Ice Co.* v. *Shortall*, 101 Ill. 46.) It is a valuable property right which can be severed from the riparian land

by grant, condemnation, relinquishment or prescription. Thomson and Dix as owners of the single tract might release it or grant it to another or restrict or reserve it as owners of the single tract to specified uses or places. (*Matter of N. Y. C. & H. R. R. R. Co.,* 77 N. Y. 248; *Trustees of Town of Brookhaven* v. *Smith,* 188 N. Y. 74; *Barnes* v. *Midland R. R. Terminal Co.,* 193 N. Y. 378; *Sage* v. *Mayor, etc., of N. Y.,* 154 N. Y. 61.)

We are thus brought to the ascertainment of the meaning and effect of the language of the deed of Thomson and Dix of 1888. The determination of the extent of the use of the water granted by that deed determines the extent of the use reserved to themselves by the grantors and granted by them to the defendant under the deed of 1902. The right of each party was carved by the deeds out of the ownership by Thomson and Dix of the riparian rights appurtenant to their title and occupation of the bordering land. The two deeds, that is, that of 1888 and that of 1902, undoubtedly, transmitted with the conveyed lands the entire rights of Thomson and Dix to use the water. The defendant has no rights in or ownership of the use of the water other than that annexed to the land conveyed to it, as restricted by the language of the deed of 1888. The real problem is to reach or ascertain the intention of the parties expressed in that deed. Its language and the physical conditions and circumstances attending the transaction are to be considered. (*Manson* v. *Curtis,* 223 N. Y. 313, 320.) As between the grantors and the grantee each doubtful expression will be understood in the sense most advantageous to the grantee. The right to use the water, as primarily granted, will not be impaired by the exception in the grant further than necessary. (*Cromwell* v. *Selden,* 3 N. Y. 253; *Price* v. *Lawson,* 74 Md. 499.)

Turning to the language itself, it discloses that the parties to the deed mutually knew that the land described in it was conveyed for manufacturing uses. They knew

that upon it the mills were to be erected. The grantors were the largest owners of the capital stock of the corporation which was to erect and operate them. They knew that the canal flume or conductor, in its size, in the location of its mouth above the dam and above the raceway or intake to the sawmill, and the water which passed into and through it to the mills were to be for the purpose of " propelling machinery or for manufacturing purposes on the lands " conveyed. For such purpose the grantors conveyed " the right to take, have and enjoy by means of such canal flume or conductor one half of all the water flowing in the Hudson river at that point, saving, excepting and reserving therefrom and thereout so much of said water and the right to draw and use the same whenever the same shall not be required by the said party of the second part, his heirs or assigns for actual use in propelling machinery or for manufacturing purposes on the lands hereby conveyed, and at all times when the water of said river shall be actually flowing over the crest of the said dam as shall be necessary or required to propel the machinery of and supply power for operating the sawmills, appurtenances and appliances now owned by said Thomson and Dix on and below said dam." It is clear and certain that the language of this grant was not used and cannot be received in its literal meaning, and for the reasons: (a) the state had at all times the right to appropriate, in connection with the Champlain canal, all or any part of the waters held back by the dam, and (b) the grantors had not the ownership or control of, and could not grant, " one half of all the water flowing in the Hudson river at that point." Whether or not they owned the bed of the river to its center, or whether or not the river was navigable, they did not own or have dominion over the water itself or, under the facts of the case, over the use of a fixed part of it. The water itself, in the nature of things, did not and could not become the subject of

their ownership, control or conveyance. (*Sweet* v. *City of Syracuse*, 129 N. Y. 316, 335; *City of Syracuse* v. *Stacey*, 169 N. Y. 231; *Pollock* v. *Cleveland Ship Building Co.*, 56 Ohio St. 655.) They had a mere usufructuary right in it, subjected to the right of the state and rights equal with theirs in the owners of the opposite or western bank. Their usufructuary and proprietary right was (in so far as it is involved in the deeds, and omitting elements immaterial here) to draw from the dammed waters water, for the purpose of power, in such quantity at any time as would not conflict with the right of the state or other riparian owners, to be returned to the river before it left their land, in a manner reasonable and safe to the lower proprietors. Such right as an entirety or any part of it they could grant. The right measured their title to and interest in the water power in those waters and the extent of any grant and all grants of power by them. The language of the deed of 1888 discloses that they were by it granting their such right as an entirety, diminished, however, by the exception created by the reservation to themselves. They deemed the words " one half of all the water flowing in the Hudson river at that point " descriptive of the right. In construing a description of this character we are not to lose sight of the obvious meaning in an attempt to treat the expression as accurate. It may have been, indeed, probably, it was, their belief or view that they owned the eastern half of the entire bed of the impounded waters, and the waters which flowed over that half and that, therefore, they had the right to take, have and use one-half of all the water flowing in the river at that point. They manifestly intended to describe in the deed the maximum of their right and title to the water or its use as " one half of all the water flowing in the Hudson river at that point " and to grant by the deed the entire of that right,— the entire of their interest

4

in the water,— diminished by the exception. The exception in the deed constituted by the reservation to the grantors of " so much of said waters and the right to draw and use the same," under the conditions stated, " as shall be necessary or required to propel the machinery of and supply power for operating the sawmill," is cogent proof of the correctness of such conclusion. We can conceive of no reason, and none has been suggested to us, inducing the grantors to desire or stipulate the exception in case they intended to convey, without it, less than their entire ownership of the water power, or intended that they retained, without it, the right to draw, through the raceway to the sawmill, all the water they wanted or could get, provided it was somewhat less than their grantee drew. If they intended either of such results the exception was incorrectly phrased and misleading. Nor can we conceive of any ground or premise in virtue of which the grantors could have thought or held that their title to or interest in the impounded waters exceeded the one-half of them or that they did not by the deed transmit their entire ownership in or of them and their use, except as limited by the exception. They intended to divest themselves of their entire right to the water power created by the dam, save so much thereof as the operation of the sawmill and the preservation of its value demanded. The correctness of our conclusion is sustained, additionally, by the expressed purpose of the grant, the situation of the parties to the conveyance and the conditions and circumstances attending the conveyance. We decide that the deed of 1888 transferred to the grantee the entire right, which was lawfully incident and annexed to the lands bordering on the river at and above the dam and owned by Thomson and Dix at the time of its execution and delivery, to withdraw and use, by means of the canal or conduit, the volume and momentum of the dammed waters, except such part of such right to

withdraw and use as the grantors reserved to themselves by the exception in the deed.

The rights of the parties must be determined by us in accordance with and as created by the terms of their deeds from Thomson and Dix, which are the agreed fountains of title to all their rights now under consideration. Those deeds constituted the estate of the defendant servient to that now of the plaintiff and servient it must remain. The defendant's grantors could not after the deed of 1888 make use of that which they had by it granted and could not use to the detriment of their grantee more water than was necessary, passing through the raceway to the sawmill, under the expressed conditions, to accomplish the stipulated result. The dominant and servient characters impressed on water power and water privileges by their common owner, by recorded grants, survive among his grantees. (*Oakland Woolen Co.* v. *Union Gas & Electric Co.*, 101 Me. 198.)

As a new trial must be granted we do not consider other questions, which may be or become of fact, that have been argued.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CUDDEBACK, POUND, CRANE and ANDREWS, JJ., concur; CARDOZO, J., dissents.

Judgment reversed, etc.