FRANK N. KYSER, Plaintiff, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

Supreme Court, Onondaga County, April 23, 1934.

*Searl & McElroy*, for the plaintiff.

*Hiscock, Cowie & Bruce*, for the defendant.

CREGG, J. Plaintiff's action is predicated on an unreasonable and unjustifiable interference by defendant, a public utility corporation, and an upper riparian owner, with rights of the plaintiff, a lower riparian owner, who operates a grist and saw mill, in and to the waters of a natural stream of considerable size known as Limestone creek, located in the town of De Witt, county of Onondaga, N. Y. Plaintiff, in his complaint, alleges in substance: That Limestone creek is a stream of considerable size which rises in the southern part of Onondaga county and flows generally in a northerly direction through the premises of the defendant herein, and through

and past the premises of the plaintiff; that the water in its natural state and unpolluted is valuable for commercial purposes; that plaintiff is the owner of a grist and saw mill located upon his premises, which is fed and operated by the waters from said stream. He also alleges that between January 1, 1920, and the date of the complaint the defendant unlawfully diverted and continues to divert to its own use, large and unreasonable quantities of water from said stream, and that it polluted and is continuing to pollute said stream by the discharge of sewage therein; that such diversion and pollution exist to such an extent as to substantially and materially diminish the flow of said stream, and to hinder and delay the operation of said mill, all of which caused and is causing considerable damage to the plaintiff. He prays for an injunction together with compensation for the damages which he claims to have sustained.

The defendant admits that it is a railroad corporation. It admits the size and location of the creek and that it owns and operates the freight yards at Minoa, N. Y.; that, in connection with said yards, it maintained a certain power and pumping station located on the west side of the creek; that the waters of said creek flow across the plaintiff's premises in a northerly direction and that he owns and operates a saw and grist mill on said stream, but denies the other material allegations of the complaint.

It appears from the evidence that the defendant, New York Central Railroad Company, erected a pumping station upon its property whereby, in cases of emergency, it pumped water from the creek to supply engines used in its freight yards at Minoa during the year 1920. The yards were ordinarily supplied with water from Otisco lake through pipes of the Suburban Water Company. It was only when a shortage occurred in that supply that water was pumped from the creek. The water from the creek is undesirable for use in its engines, so that it was only used in cases of necessity and emergency. It was conceded upon the trial that such pumping ceased in the latter part of 1920 and that no waters have been pumped from the creek by the defendant since that time. The pumping station is now being dismantled. Plaintiff testified that his average gross earnings from the operation of the mill for several years prior to 1920 were approximately $2,000 per year. On cross-examination he admitted that his gross earnings from such source in 1920 were approximately $2,000 and that his mill was closed down about one month and six days during that year on account of necessary repairs to one of the flumes.

In view of that testimony it is rather difficult to understand how plaintiff could have sustained damages in 1920 by reason of the

diversion of waters of the creek by the defendant for the operation of its engines in and about its freight yards in cases of emergency. It is also a serious question whether or not under the circumstances such diversion constituted an unreasonable use of the waters of the creek. This case differs very materially from a case where the waters are continuously diverted in large quantities so as to prevent the regular flow during dry seasons.

It appears that sewage from the defendant's yards empties into the creek. It also appears that various other sewers for several miles above plaintiff's property empty into the same creek. It also appears that various persons along the line of said creek are in the habit of throwing rubbish therein. It appears, however, that the defendant constructed and maintained several large catch basins in its sewers before they entered the creek, which catch basins collected the sediment from the sewage; that such catch basins were cleaned regularly, which permitted only the liquid portion of the sewage to discharge into the stream.

Considering the large quantity of water which flows in the creek I do not believe such liquid sewage could materially interfere with the operation of the water wheels of plaintiff's mill. Plaintiff does not claim that it is necessary for him to use the waters of the creek for domestic purposes nor does he claim any damages on that account.

If in the natural and ordinary course of events it becomes necessary for one riparian owner, in his right to use and enjoy the benefits of a stream, to discharge a reasonable amount of sewage therein, he may do so even though it may render the water somewhat unsafe to be used by another riparian owner farther down the creek for manufacturing purposes. (*Merryfield* v. *Worcester*, 110 Mass. 216.)

It is well settled that while a riparian owner does not own the running water he has the right to a reasonable use of it as it passes by his land. All other owners upon the same stream have the same rights, the right in no one is absolute but is qualified by the rights of the others to have the stream substantially preserved in its natural size, flow and purity and to protect it against material and unreasonable diversion or pollution.

The enjoyment of each, however, must be according to his opportunity; the upper owner has the first chance. The lower owner must submit to such loss or pollution as is caused by reasonable use. (*Pierson* v. *Speyer*, 178 N. Y. 270.)

Whether or not use or detention of water is reasonable must be determined by the extent and capacity of the stream, the use to which it has been put and the rights that other owners upon the same stream may have. What is the reasonable use of a stream

depends upon the peculiar circumstances surrounding the case and the uses which are made of the stream by proprietors below and whether or not the use or pollution by an upper riparian owner essentially impairs the usefulness of the stream to lower riparian owners. The essential question in each particular case is, what is reasonable under the conditions and circumstances there presented. The right to the use of water of a flowing stream arises by mere operation of the law as an incident to the ownership of the bank and as a part of the estate of its owner. (*United P. B. Co.* v. *Iroquois P. & P. Co.*, 226 N. Y. 38; *Reese* v. *City of Johnstown*, 45 Misc. 432.)

In order to determine whether or not the pollution of a stream caused damages to another riparian owner it is not enough to determine the extent and nature of the impurities projected into the stream. The location of the complainant's property and the use to which it is devoted must be taken into consideration, as well as the effect upon such use by any impurities in the stream, and the extent to which the pollution of the water may have been attributable to other sources and causes than those charged by the complainant. All of these matters bear upon the question of reasonable use. (*Townsend* v. *Bell*, 167 N. Y. 462; *Strobel* v. *Kerr Salt Co.*, 164 id. 303; *Henderson Estate Co.* v. *Carroll Electric Co.*, 189 id. 531.)

In view of all the facts and surrounding circumstances in this case I am of the opinion that the use heretofore and now being made of the creek for the discharge of sewage by the defendant in the manner in which it does is not an unreasonable use thereof nor does it essentially impair the usefulness of the stream to the plaintiff.

Plaintiff having conceded upon the trial that diversion of the waters ceased in the latter part of 1920, and he having testified that his gross earnings during that year were practically the same as in previous years, diversion of the waters during that year did not essentially impair the usefulness of the stream to the plaintiff, nor did it constitute an unreasonable use of such waters by the defendant. In my opinion plaintiff did not suffer any damages by reason of the diversion of water during 1920. For these reasons plaintiff is not entitled to an affirmative judgment nor to an injunction upon either phase of the case.

Defendant is entitled to judgment dismissing plaintiff's complaint. Findings may be presented accordingly.